**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 23, 2011

No. 10-10746

Lyle W. Cayce
Clerk

JEFF HEMPHILL,

Plaintiff-Appellant

v.

CELANESE CORP.,

Defendant-Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:08-CV-2131

Before DAVIS, CLEMENT, and ELROD, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellee Celanese Corporation ("Celanese") employed Plaintiff-Appellant Jeff Hemphill as an auditor. Celanese terminated Hemphill's employment in 2007. Hemphill later sued under the whistleblower protection provisions of the Sarbanes-Oxley Act ("SOX"), arguing that Celanese terminated his employment on the basis of activity protected by that statute. The district court granted Celanese's motion for summary judgment, holding that Hemphill's protected activity was not a contributing factor in his termination and,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-10746

moreover, that Celanese demonstrated by clear and convincing evidence that it would have terminated Hemphill regardless of his protected activity. We affirm.

I.

Celanese is a large, public corporation that manufactures and distributes industrial chemicals. Celanese hired Hemphill as an internal audit manager in 2006.

In 2007, Hemphill began work on an internal audit of a Celanese construction project in Ocotlan, Mexico. The team of auditors managed by Hemphill identified several potential violations of law and company policy regarding the Ocotlan project. Hemphill's team explained these problems in an audit report.[1] Hemphill also reported these issues to his superiors, including Donna Wegner, and requested that a forensic auditor be hired to determine if any fraud had been committed in connection with these accounting problems. Hemphill additionally raised the issues with Gary Rowan, a Celanese compliance officer. According to Hemphill, Wegner became angry that Hemphill had met with Rowan without her permission.

Hemphill participated in the further investigation of the accounting problems at the Ocotlan project. The Celanese auditors eventually determined that several Celanese employees had violated company policy, but not any laws, and one employee was removed from the Ocotlan project.

Hemphill never reported these accounting problems to a governmental authority while employed at Celanese. Celanese alleges that its investigation of these practices revealed that no violation of the FCPA or other federal laws

---

[1] The report identified a potential violation of the Foreign Corrupt Practices Act ("FCPA") involving possible payments of funds allocated for travel expenses to officials in the Mexican city of Totolan in exchange for a right of way contract; a potential conflict of interest between a Celanese employee whose brother was a municipal employee in another city from which Celanese was attempting to acquire a right of way; and transfer of title of a company-owned truck to a Mexican citizen.

occurred. The record indicates that no legal enforcement action was ever initiated against Celanese on the basis of these accounting irregularities.

After the Ocotlan audit, Wegner told Hemphill that in order to create a better working environment he should "not develop issues." This conversation occurred in June 2007.

Around this time, Hemphill also worked on another project reviewing the travel and entertainment records for several Celanese employees. Hemphill and his staff discovered certain violations of the company's policies. Hemphill later testified at deposition that in his view, these violations created the risk of a "books and records violation" of Securities and Exchange Commission ("SEC") rules. Hemphill advised Wegner of the violations and asked to raise the issues with Celanese's audit committee. Wegner rebuffed this request.

In August 2007, Hemphill's secretary, Shirley Hall, was making arrangements to rent a boat for a corporate outing. According to Hall, for some reason Hemphill emerged from his office and began yelling at her in an abusive manner regarding her handling of the matter. Celanese employees John Fotheringham and Tonya Donaldson, who both worked in a different department of the company, witnessed the event. Fotheringham and Donaldson reported Hemphill's behavior to Alan Maxwell, Celanese's director of human resources. Maxwell assigned investigation of the incident to Zarinah Curry, a human resources employee who had no prior knowledge about Hemphill. Maxwell notified Hemphill's superior, Wegner, about the investigation.

Curry interviewed Hall, Donaldson, Fotheringham, another employee named Miniki Peacock, and Hemphill. Hall and the employee witnesses said that Hemphill had acted in an aggressive and unprofessional manner. Fotheringham described the incident in the following terms: "outrageously rude and completely unprofessional"; "atrocious"; "a one-sided rant by Mr. Hemphill . . . she was spoken to like a dog." Donaldson used the words "aggressive" and

No. 10-10746

"abusive" to describe the incident. Hemphill denied yelling or otherwise engaging in unprofessional behavior.

After concluding the investigation, Curry recommended that Hemphill be terminated due to his "lying during a formal investigation, harassment of an employee, and creating a negative work environment for the team and those around him." Maxwell agreed, as did Joseph Fox, Celanese vice president of human resources and employment law. Curry communicated these recommendations to Hemphill's supervisor, Wegner. Wegner testified at deposition that she was initially reluctant to accept the termination recommendation, but that Fox told her that other employees had been fired under similar circumstances. Wegner, who had the final authority to make employment decisions concerning Hemphill, then accepted the termination recommendation.

Celanese terminated Hemphill on September 4, 2007. Hemphill filed this suit on December 2, 2008, claiming that he was terminated in violation of the whistleblower protection provisions of SOX because of the reports he made regarding the Ocotlan audit and the travel and expenses audit. Celanese moved for summary judgment. The district court granted the motion, concluding that Hemphill failed to establish the last prima facie element of his claim: that his protected activity was a "contributing factor" to his termination. The district court also determined that, even assuming Hemphill established his prima facie claim, Celanese rebutted the claim with clear and convincing evidence that Celanese would have terminated Hemphill regardless of his protected activity. Hemphill now appeals.

## II.

A district court's ruling on summary judgment is reviewed *de novo*, applying the same standards as the district court. *Bolton v. City of Dallas*, 472 F.3d 261, 263 (5th Cir. 2006). Summary judgment should be granted "if the

4

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2011). The court must view the record in the light most favorable to the non-moving party. *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.,* 352 F.3d 254, 260 (5th Cir. 2003).

## III.

Hemphill's claim arises under the whistleblower protection provisions of SOX, codified at 18 U.S.C. § 1514A.[2]   This court thoroughly explained the elements of a SOX whistleblower claim under § 1514A in *Allen v. Administrative Review Board*, 514 F.3d 468 (5th Cir. 2008).  To establish a prima facie claim, a plaintiff must show by a preponderance of the evidence that "(1) []he engaged in protected activity; (2) the employer knew []he engaged in the protected activity; (3) []he suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action." *Id.* at 475-76.  Then, "[i]f the employee establishes these four elements, the employer may avoid liability if it can prove by clear and convincing evidence that it would have taken the same unfavorable personnel action in the absence of that protected behavior." *Id.* (internal quotations and citations omitted).

---

[2]   Section 1514A(a) states in pertinent part:

No [publicly-traded company] . . . may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee--(1) to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of 1341[mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by--(C) a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct) . . .

No. 10-10746

Assuming that Hemphill has raised genuine issues of fact regarding the first three elements of his prima facie claim,[3] we focus on the fourth and final element: whether his protected activity was a "contributing factor" in Celanese's decision to terminate his employment.

In *Allen,* we noted that "[a] contributing factor is any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision." *Id*. 3d at 476 n.3 (quotations and citations omitted). Hemphill has failed to create a genuine issue of fact regarding this element of his claim because Celanese has presented substantial evidence that it conducted an investigation of Hemphill's verbal abuse of Hall and that Celanese terminated Hemphill on this basis alone. We agree with the district court that no genuine dispute of material fact exists on which a jury could conclude that Hemphill's protected activity was a contributing factor in Celanese's decision.

Even if we assume *arguendo* that Hemphill can establish a factual dispute as to whether his protected activity was *a* contributing factor in Celanese's termination decision, Celanese may still avoid liability by presenting "clear and convincing evidence that it would have taken the same unfavorable personnel action in the absence of that protected behavior." *Id*. at 476. The district court

---

[3] To qualify as protected activity under § 1514A(a)(1)(C), an employee must seek to "provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes" mail fraud, wire fraud, bank fraud, securities fraud, a violation of any rule or regulation of the SEC, or a violation of any provision of federal law relating to fraud against shareholders. Hemphill testified in his deposition that he had a reasonable belief that the accounting issues he discovered may have constituted violations of 15 U.S.C. § 78m(b)(5), which provides that "[n]o person shall knowingly circumvent or knowingly fail to implement a system of internal accounting controls or knowingly falsify any book, record, or account . . . ." Thus, viewed in a favorable light, the facts show that Hemphill engaged in protected activity to the knowledge of Celanese, satisfying the first two prima facie elements of Hemphill's claim. Hemphill's termination was, of course, an unfavorable personnel action, satisfying the third prima facie element.

No. 10-10746

held that Celanese has met this standard, and we agree that no genuine dispute of material fact exists regarding this issue.

Celanese has shown that its human resources department conducted a thorough investigation of the incident involving Hemphill's verbal abuse of Hall. The primary human resources employee conducting the investigation, Curry, had no prior knowledge of Hemphill's auditing activities. Curry interviewed several employees who witnessed the incident and reported Hemphill's behavior. These employees worked in a different department of the company than Hemphill and had no material interest in Hemphill's auditing activities. Two of the witnesses described Hemphill's behavior toward Hall as "aggressive," "unprofessional," "abusive," and "atrocious." Curry also interviewed Hemphill and concluded that he lied about his behavior.

No evidence suggests that the two executives who contributed to the decision to fire Hemphill—the human resources director, Maxwell, and vice president of human resources, Fox—had any particular knowledge of or interest in Hemphill's auditing work. The only executive participating in the termination decision who worked with Hemphill on the audits and knew of his discovery of accounting irregularities was Wegner, Hemphill's supervisor. The undisputed evidence indicates, however, that Wegner simply accepted the unanimous termination recommendation provided to her by Curry, Maxwell, and Fox.

This evidence clearly and convincingly shows that Celanese terminated Hemphill because Celanese concluded that he mistreated Hall. We reject Hemphill's contention that Celanese's investigation was unreliable because Curry did not interview additional employees who may have witnessed the incident. Hemphill vaguely asserts that if Curry had interviewed other witnesses, they would have exculpated him of the charge that he mistreated Hall. However, Hemphill has produced no affidavit, sworn statement, or any

other admissible evidence beyond his own testimony demonstrating that these other witnesses would have testified in his favor, much less absolved him. In short, Hemphill has produced no evidence casting doubt on the integrity of the investigation.

Thus, the district court was correct that Celanese has established by clear and convincing evidence that Celanese would have terminated Hemphill regardless of any protected activity. No genuine dispute of material fact exists regarding this issue.

For the foregoing reasons and those given by the district court, we AFFIRM the district court's order of summary judgment.